Filed 9/5/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICK J. WILSON,<br><br>    Defendant and Appellant. | H037262<br>(Santa Clara County<br>Super. Ct. No. C9922421) |

This case concerns the scope of a court's power to increase a defendant's sentence based on the record of a prior conviction. The trial court initially sentenced defendant Rick J. Wilson to a term of 25 years to life for felony drunk driving — his third strike under the "Three Strikes" law. The court found the first two strikes based on the record of a prior drunk driving offense from 1993. In that case, Wilson caused an accident while driving drunk, injuring one passenger and killing another. He pleaded no contest to (1) causing injury while driving intoxicated, and (2) gross vehicular manslaughter while intoxicated. The court examined the transcript of the 1993 preliminary hearing and found Wilson had "personally inflicted" great bodily injury on both victims, making each offense a separate strike.

After several appeals, a federal court vacated Wilson's sentence because the trial court had violated *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*). On remand, the state trial court struck the first strike, but left intact the second strike that was based on the manslaughter offense. The court resentenced Wilson as a second strike offender to

a six-year term, double the three-year upper term for felony drunk driving. On appeal, Wilson claims the trial court's finding of "personal infliction" for the second strike violated his right to a jury trial.

We hold the trial court erred by doubling defendant's sentence based on the strike for the prior manslaughter conviction. Wilson never admitted to conduct sufficient to establish personal infliction in that 1993 manslaughter offense. To the contrary, he disputed the relevant facts of his conduct. The trial court could not have found the offense to be a strike without resolving this factual dispute. By doing so, the court violated federal law under *Apprendi* and state law under *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*).

## I. FACTUAL AND PROCEDURAL BACKGROUND

A. *Overview*

The proceedings below concerned two felony drunk driving incidents — the first in Nevada County in 1993, and the second in Santa Clara County in 1999.[1] In sentencing Wilson for the 1999 offense, the trial court looked to the record of the 1993 offense and found two prior "serious felonies" qualifying as strikes, or "strike priors" under the Three Strikes law. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.)[2] The court sentenced Wilson as a third strike offender to a term of 25 years to life.

After exhausting his state court appeals, Wilson petitioned for a writ of habeas corpus in federal court. A federal district court initially denied his petition, but the Ninth Circuit Court of Appeals reversed. (*Wilson v. Knowles* (9th Cir. 2011) 638 F.3d 1213 (*Wilson v. Knowles*).) The district court then vacated his sentence. On remand for resentencing, the state trial court struck one of the two strike priors, but not the other. Accordingly, the court sentenced Wilson as a second strike offender to a term of six

---

[1]     Wilson suffered numerous other convictions, but they are irrelevant to the legal analysis here.

[2]     Subsequent undesignated statutory references are to the Penal Code.

2

years. Wilson appeals this sentence, claiming the trial court erred by increasing his sentence based on the remaining strike prior.

B. *The 1993 Drunk Driving Offense*

In 1993, Wilson, driving while intoxicated, caused an accident resulting in injuries to one passenger and the death of another. At the preliminary hearing, witnesses testified to the following:

Wilson was driving eastbound on Interstate 80 from Truckee to Reno on the morning of September 8. The highway had four lanes — two lanes in each direction, separated by a median. The road was flat and dry, with a slight curve to the right. Wilson's girlfriend, Debra Horvat, rode in the front passenger's seat. They had picked up a hitchhiker, John Haessly, who sat in the rear seat.

A motorist behind them saw the car traveling in the left lane at about 85 miles per hour. The car moved into the right lane, then turned back across the left lane and onto the dirt of the median. The car then overcorrected and veered right, across the eastbound lanes, and off the right side of the road, where it flipped over. The motorist drove past the scene to a weigh station where he reported the accident. Tire tracks on the median and skid marks on the road corroborated the motorist's account of the accident.

Another motorist stopped at the scene after spotting Wilson trying to flag down help. California Highway Patrol Officer David Cox testified that according to this second motorist, Wilson stated, "The bitch grabbed the wheel. What did she grab the wheel for?" The motorist also reported the statement to another officer on the scene.

Horvat was found in the car with the right front passenger's seat belt wrapped around her neck. Haessly was found lying in a field between the car and the highway, dead from blunt force trauma.

Officer Cox interviewed Wilson at the hospital about an hour after the accident. Wilson appeared intoxicated. He was belligerent and exhibited mood swings. When Officer Cox asked if he had been drinking, Wilson answered, "Yes. All of us were."

3

Wilson denied that he had been driving. He claimed Horvat was driving. Wilson said he had been in the back seat, and that he was thrown from the car. He also claimed he had been wearing a seat belt. Wilson then ended the interview. A blood sample taken at the hospital contained 0.21 percent alcohol.

Officer Cox attempted to interview Horvat in the hospital emergency room, but Horvat could not speak. She was in pain and had an oxygen mask over her mouth. Officer Cox instructed her to nod her head "yes" or "no" in response to his questions. When he asked if she had been driving, she shook her head to indicate "no." When he asked if Wilson had been driving, she nodded "yes." When he asked if Haessly had been in the back seat, she nodded "yes."

Horvat also testified at the preliminary hearing. The car, a 1991 Ford Tempo, belonged to her. She and Wilson had been driving around the area since 8:00 p.m. the night before the accident. She gave the keys to Wilson to drive because she did not like driving in the mountains and she "panicked." As the sun was coming up, they pulled into a field to rest, and she fell asleep. She slept soundly because she had been awake for 24 hours. Her next memory was that of waking up in the hospital. She did not recall the accident. She did not recall picking up Haessly, and she did not recall Officer Cox questioning her. She denied that she had been drinking alcohol, and she denied seeing Wilson drink alcohol. She testified that there was no alcohol in the car at any time. She knew that a claim had been brought against her insurance company. She also knew that she could be sued personally.

In closing argument, Wilson argued the evidence was insufficient to establish probable cause for the charges against him. Wilson specifically challenged the evidence of causation, arguing that statements at the scene of the accident showed Horvat had grabbed the steering wheel, thereby causing the accident. Regarding Horvat's testimony that she was asleep at the time, Wilson challenged her credibility given that she knew she could be found liable for her role in the accident. The court, discounting the credibility of

4

the claim that Horvat had grabbed the wheel, found probable cause for all the charges and held Wilson to answer.

The case never went to trial. Wilson pleaded no contest to (1) proximately causing bodily injury to another person while driving intoxicated, and (2) gross vehicular manslaughter while intoxicated. (Veh. Code, § 23153; § 191.5, subd. (a).) He also admitted a prior misdemeanor conviction for driving under the influence of alcohol. (Veh. Code, § 23152.) The record shows no transcript of any plea colloquy. Wilson signed a change of plea form. A section on the form titled "Court's Findings and Order" states that the court, having questioned the defendant, found "that there is a factual basis for the plea." There is no record of Wilson admitting to any facts. The minutes of the sentencing hearing refer only to "the Probation Report, the diagnostic report, letters and the statement of the victim," and "comments by counsel."

The court sentenced Wilson to a term of seven years, suspended, with five years of probation to include 365 days in county jail.

C. *The 1999 Drunk Driving Offense*

In 1999, a police officer stopped Wilson after he ran a red light at high speed. The officer smelled alcohol and observed signs of intoxication. Wilson was unable to complete several field sobriety tests. After the officer arrested him, Wilson became belligerent and refused to take a blood test.

The information charged Wilson with felony driving under the influence of alcohol, with a prior conviction for gross vehicular manslaughter while intoxicated. (Veh. Code, § 23152, subd. (a), former Veh. Code, § 23175.5, subd. (a)(3), Stats. 1997, ch. 901, § 6, p. 6488, now Veh. Code, § 23550.5, subd. (b).) In addition to alleging a prior conviction, the information alleged two strike priors based on the 1993 offense: (1) driving under the influence of alcohol with personal infliction of great bodily injury, pertaining to the injuries inflicted on Horvat; and (2) gross vehicular manslaughter while

5

intoxicated with personal infliction of great bodily injury, pertaining to the death of Haessly.  (§ 1192.8, subd. (a).)

The court held a jury trial on the charge of driving under the influence, and the jury found Wilson guilty.  After Wilson waived his right to a jury trial on the fact of the prior conviction — *but not on the facts required to prove the strike prior* — the court found true the allegation that Wilson had suffered a prior conviction for gross vehicular manslaughter.

The court subsequently held a bench trial on the strike priors.  The prosecution introduced the following documents from the record of the 1993 conviction in Nevada County: (1) the information; (2) the above-mentioned change of plea form; (3) minutes of the sentencing hearing; (4) the abstract of judgment; and (5) the transcript of the preliminary hearing.  The prosecution also introduced the booking sheets from Wilson's arrests in the 1993 and 1999 offenses.  A fingerprint expert testifying for the prosecution opined that the fingerprints on both booking sheets were those of the same person.  The parties presented no other evidence.  Discussion of the evidence focused exclusively on the preliminary hearing transcript, and argument centered on whether Horvat had suffered great bodily injury.  Defense counsel argued that "great bodily injury is not an element of a felony driving under the influence, and I don't believe that sufficient evidence has been produced in order to prove personal infliction of that type of injury, great bodily injury."

The trial court, rejecting Wilson's argument, found true both strike prior allegations, but the court allowed further briefing on the matter.  Wilson submitted a trial brief arguing that the trial court could not make the findings necessary to establish a strike prior under *People v. Guerrero* (1988) 44 Cal.3d 343 (*Guerrero*), because only a jury could find the required facts from the record of conviction.  Wilson also moved to dismiss the strike priors under section 1385.

The trial court denied the motion to dismiss and reaffirmed its findings of the strike priors.  The court thereby found three strikes — two strike priors from the 1993

offense, and one strike from the current 1999 offense. Accordingly, the court sentenced Wilson as a third strike offender to a term of 25 years to life. (§§ 667, subd, (e)(2)(A)(ii), 1170.12, subd. (c)(2)(A)(ii).)

D. *Subsequent Proceedings*

Wilson appealed from the sentence for the 1999 offense.[3] His opening brief raised claims primarily related to the strike prior pertaining to the injuries inflicted on Horvat. Wilson claimed the evidence was insufficient to support the required findings, including the finding of personal infliction. He further argued that the trial court improperly found facts underlying the strike prior in violation of his due process rights and *Guerrero*. In his reply brief, Wilson specifically challenged the strike prior pertaining to the death of Haessly. Wilson argued that the evidence was insufficient to "establish personal infliction in light of the evidence that Horvat grabbed the steering wheel[,] leading to the accident." Wilson cited *Apprendi* for the proposition that federal law required that the strike prior findings be proven beyond a reasonable doubt.

This court affirmed the judgment over a dissent by Presiding Justice Rushing. (*People v. Wilson* (Dec. 23, 2002, H021472) [nonpub. opn.].) The majority opinion found the claim that Horvat had grabbed the wheel to be "suspect" and held that the sentencing court properly discredited that evidence. (*Id.* at p. 3.) The majority opinion also rejected Wilson's procedural due process arguments against the trial court's adjudication of disputed facts pertaining to the injuries inflicted on Horvat. (*Id.* at p. 5.) In dissent, Justice Rushing wrote that the trial court's factfinding violated Wilson's federal constitutional rights under *Apprendi*, as well as state law under *Guerrero*. Of significant note, neither the majority nor the dissent considered Wilson's claims pertaining to the strike prior for gross vehicular manslaughter. Wilson sought review by the California Supreme Court, but it denied his petition for review.

---

[3] Defendant has requested that we take judicial notice of the record in his prior appeal. We hereby do so. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

Wilson then petitioned a United States District Court for a writ of habeas corpus. The district court denied the petition, and Wilson appealed. In agreement with Justice Rushing's dissent, the Ninth Circuit Court of Appeals reversed, holding that the state trial court violated Wilson's federal constitutional rights under *Apprendi*. (*Wilson v. Knowles*, *supra*, 638 F.3d at p. 1216.) Accordingly, the district court granted the petition, issued the writ, and vacated Wilson's sentence. The court remanded the matter to the state trial court for resentencing "in a manner consistent with the views stated" in *Wilson v. Knowles*.

On remand, the state trial court struck the strike prior finding pertaining to the injuries to Horvat. However, the court interpreted *Wilson v. Knowles* to leave intact the strike prior based on the gross vehicular manslaughter conviction. Accordingly, the court resentenced Wilson to a six-year term as a second strike offender. Although his attorney agreed with the court's interpretation of *Wilson v. Knowles*, Wilson personally objected to the remaining strike prior. The court overruled his objection and advised him to consult with his appellate counsel. The court ordered Wilson released forthwith since he had already spent more than twelve years in custody for the 1999 offense.

## II. DISCUSSION

Both California law and the federal Constitution constrain a trial court's power to make findings for the purpose of sentence enhancement. (*Apprendi, supra*, 530 U.S. at p. 477; *People v. Epps* (2001) 25 Cal.4th 19, 25.) Wilson contends the trial court violated both state and federal law by finding his prior conviction for gross vehicular manslaughter to be a serious felony, thereby doubling his sentence. We agree.

### A. *Relevant Statutes*

Section 191.5, subdivision (a) defines gross vehicular manslaughter while intoxicated as "the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the

8

commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence." The elements of the offense are: (1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the negligent act, another person was killed. (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1159.)

"Personal infliction" of "great bodily injury" are not elements of gross vehicular manslaughter while intoxicated. However, section 1192.8, subdivision (a) defines this offense as a "serious felony" when it "involve[s] the personal infliction of great bodily injury on any person other than an accomplice . . . ." Similarly, section 1192.7, subdivision (c)(8) defines any felony as a "serious felony" when "the defendant personally inflicts great bodily injury on any person, other than an accomplice . . . ." This includes gross vehicular manslaughter while intoxicated if, in the commission of the crime, the defendant personally inflicts great bodily injury on another person who is not an accomplice. (*People v. Gonzales* (1994) 29 Cal.App.4th 1684, 1688.)

The Three Strikes law in effect at the time of Wilson's 1999 offense required the sentencing court to double the applicable term of imprisonment for the current felony when the defendant was found to have committed one prior serious felony. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).) The trial court did so here in sentencing Wilson to a six-year term, twice the upper three-year term. (§ 18.)

B. *State Law Governing the Trial Court's Power to Find Sentence Enhancements*

Historically, California law has afforded criminal defendants a limited right to jury trial on the truth of prior convictions, (§§ 1025, 1158; *People v. Wiley* (1995) 9 Cal.4th 580, 589), but this right does not extend to the determination of whether a prior conviction constitutes a serious felony qualifying as a strike under the Three Strikes law.

9

(*People v. Kelii* (1999) 21 Cal.4th 452, 457.)  With respect to findings that lengthen a defendant's sentence, California law mandates that "it is the court, rather than the jury, that is entrusted with the responsibility of undertaking this inquiry and making the determination."  (*McGee*, *supra*, 38 Cal.4th at p. 685.)  As set forth in *McGee*, a sentencing court making this inquiry is limited to examining the record of the prior conviction to determine "the nature or basis" of the prior offense.  (*McGee*, *supra*, at 691.)  In doing so, the court must not engage in resolving factual disputes concerning the defendant's conduct.  "[T]he inquiry is a limited one and must be based upon the record of the prior criminal proceeding, with a focus on the elements of the offense of which the defendant was convicted."  (*Id.* at p. 706.)  "The need for such an inquiry does not contemplate that the court will make an independent determination regarding a *disputed issue of fact relating to the defendant's prior conduct* [citation], but instead that the court simply will examine the record of the prior proceeding to determine whether that record is sufficient to demonstrate that the conviction is of the type that subjects the defendant to increased punishment under California law."  (*Ibid*.)  (Italics added.)

Under this rule, for example, a court may look to the record of conviction to determine whether the defendant's prior serious felony convictions were sustained "on charges brought and tried separately. . . ."  (*Wiley*, *supra*, 9 Cal.4th at p. 585.)  This is a purely legal inquiry.  And to the extent it requires certain factual determinations, "such as the filing of charges either in a single complaint or multiple complaints, such facts generally are readily ascertainable upon an examination of court documents. This is the type of inquiry traditionally performed by judges as part of the sentencing function."  (*Id.* at p. 590.)

"Sometimes the determination does have a factual content . . . ."  (*Kelii*, *supra*, 21 Cal.4th at p. 456.)  "But these factual questions are of limited scope."  (*Ibid*.)  The facts of *McGee* illustrate those limits.  *McGee* had suffered two prior convictions for robbery in Nevada, both alleged to be serious felonies in his California case.  (*McGee,*

*supra,* 38 Cal.4th at p. 688.) Robbery constitutes a serious felony under section 1192.7, subdivision (c)(19), but the elements of robbery under Nevada law vary from those under California law. The Nevada definition sweeps more broadly than the California definition, such that "it was at least theoretically possible that [McGee's] Nevada convictions involved conduct that would not constitute robbery under California law." (*Ibid.*) However, in the plea colloquy for each prior conviction, McGee admitted to specific conduct satisfying the elements of robbery under California law. (*Id.* at p. 689.) Absent any factual dispute on this point, the trial court could properly determine whether the prior convictions "realistically may have been based on conduct that would not constitute a serious felony under California law." (*Id.* at p. 706.)

Here, the applicable statutory definition of a serious felony required the trial court to make three findings in addition to whether defendant suffered the prior conviction. The trial court had to determine whether the prior conviction involved (1) personal infliction, (2) of great bodily injury, (3) on any person other than an accomplice. (§ 1192.8, subd. (a).)

As to great bodily injury, the court could properly make this finding under California law because it was necessarily implied by the elements of the prior conviction. Wilson's plea of no contest to gross vehicular manslaughter while intoxicated constituted an admission of every element of that offense. (*People v. Jones* (1959) 52 Cal.2d 636, 651.) The death of another person is an element of the crime. (*Verlinde*, *supra*, 100 Cal.App.4th at p. 1159.) Therefore, as implied by the elements of the offense, Wilson admitted the fact that another person was killed as a proximate result of his conduct. Wilson did not dispute — and cannot dispute, as a matter of pure logic — that by causing Haessly's death, he necessarily caused him great bodily injury. Thus, the trial court, by examining the "nature or basis" of the vehicular manslaughter offense, properly determined that it involved great bodily injury to Haessly. (*McGee*, *supra*, at 691.)

11

By contrast, the court could not determine from the record of conviction whether the offense involved *personal infliction* without resolving a factual dispute. By pleading to the vehicular manslaughter charge, Wilson only admitted to the element of *proximately causing* Haessly's death. (*Verlinde*, *supra*, at p. 1159.) But proximate causation and personal infliction are two different elements. (*People v. Rodriguez* (1999) 69 Cal.App.4th 341, 347.) "To 'personally inflict' an injury is to directly cause an injury, not just to proximately cause it." (*Ibid.*) In construing the phrase "personally inflicts great bodily injury" in the analogous context of section 12022.7, the California Supreme Court held it applies "only to a person who himself inflicts the injury." (*People v. Cole* (1982) 31 Cal.3d 568, 572.) Citing to a dictionary definition of "personally," the court in *Cole* further construed it to mean " 'done in person without the intervention of another; direct from one person to another.' " (*Ibid.*) The defendant need not be exclusively involved in inflicting the injury, but the defendant must "do so directly rather than through an intermediary. . . ." (*People v. Modiri* (2006) 39 Cal.4th 481, 493.) This construction proscribes a much narrower range of conduct than the element of proximate causation, which only requires that death be a foreseeable "direct, natural and probable" result of "but for" causation. (*People v. Dawson* (2009) 172 Cal.App.4th 1073, 1094 [quoting CALJIC No. 3.40].)

At the preliminary hearing in the 1993 offense, the prosecution put into evidence Wilson's own statements claiming that Horvat grabbed the steering wheel. The prosecution apparently offered the evidence to prove Wilson was driving at the time, but Wilson relied on this same evidence to dispute proximate causation for the injuries to Horvat. As the element of personal infliction was not at issue, Wilson had no reason to argue specifically against it, but the logic of his argument relating to proximate cause applies equally to personal infliction of great bodily injury. If it were true that Horvat had grabbed the wheel, Wilson would not have personally inflicted the injuries on Haessly because Wilson would not have been acting "without the intervention of

12

another." (*Cole*, *supra*, 31 Cal.3d at p. 572.) Instead, Horvat would have been acting as an "intermediary" such that the chain of causation did not flow "direct[ly] from one person to another." (*Ibid.*; *Modiri*, *supra*, 39 Cal.4th at p. 493.)

Thus, the prior conviction "realistically may have been based on conduct that would not constitute a serious felony under California law." (*McGee*, *supra*, at p. 706.) The sentencing court could only resolve the relevant factual dispute by weighing the evidence and discrediting defendant's statements. As the majority recognized in our prior opinion in this matter, the court did so implicitly. (*People v. Wilson*, *supra*, H021472.) But because this finding involved "a disputed issue of fact relating to the defendant's prior conduct," we now hold—in light of *McGee,* issued *after* our prior opinion—that the court did not have the power to resolve this dispute under California law. [4] (*McGee* at p. 706.)

C. *Federal Law Governing the Trial Court's Power to Find Sentence Enhancements*

The Sixth Amendment right to trial by jury and the Fourteenth Amendment right to due process also limit a judge's role in sentencing. (*Apprendi*, *supra*, 530 U.S. 466, 483, fn. 10.) "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[5] (*Id.* at p. 490; *Almendarez-Torres v. United States* (1998) 523 U.S. 224, 227.) At issue here is the extent to which the federal law's exception for "the fact of a prior conviction" allows the sentencing court to find facts

---

[4]   As noted above, section 1192.8 also requires a finding that Haessly was not an accomplice to the prior offense. Defendant does not argue that the trial court erred in making this finding. Having held that the court erred on other grounds, we decline to decide whether it did so with respect to this finding.

[5]   Under the current version of California's current triad-based determinate sentencing scheme, the upper term is the relevant statutory maximum. (*People v. Jones* (2009) 178 Cal.App.4th 853, 866.)

about the prior conviction beyond those admitted by the defendant or implied by the elements of the offense.

The California Supreme Court most recently examined the scope of the prior conviction exception in *McGee*, *supra*, 38 Cal.4th at 707. As noted in *McGee*, the United States Supreme Court had not yet squarely applied *Apprendi* to priors-based sentence enhancements in a way that would have overturned California law. (*McGee* at p. 686.) When *McGee* was decided, the high court's leading case was *Shepard v. United States* (2005) 544 U.S. 13. In that case, the court considered sentencing under the federal Armed Career Criminal Act (ACCA), a priors-based sentence enhancement statute analogous to California's Three Strikes law. (18 U.S.C. § 924, subd. (e).) The ACCA imposes a minimum sentence of 15 years for any felon who possesses a firearm after three prior convictions for serious drug offenses or violent felonies. The term "violent felony" includes burglary, inter alia. (18 U.S.C. § 924, subd. (e)(2)(B)(ii).) Burglary under the ACCA is defined generically as an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." (*Taylor v. United States* (1990) 495 U.S. 575, 599.) Shepard had pleaded guilty in four prior burglary convictions, but they arose under Massachusetts law, which defines burglary more broadly to include entry into a boat or car. The record of conviction was silent on the factual basis for the pleas, "there being no plea agreement or recorded colloquy in which Shepard admitted the generic fact." (*Shepard* at p. 25.)

The government argued that the sentencing court could look to the facts in the police reports or complaint applications to determine whether Shepard's convictions fell within the generic definition of burglary. But the high court, rejecting the argument, held that the sentencing court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge *to which the defendant assented*." (*Id.* at p. 16.) (Italics added.) In Part II of the opinion, a majority of the court based its holding on a statutory

14

construction of the ACCA.  In Part III, a four-justice plurality wrote that *Apprendi* would prohibit the sentencing court from looking to the record of conviction to make any disputed findings of fact.  (*Id.* at p. 25 (plur. opn. of Souter, J.).)  Justice Thomas wrote separately, concurring in the judgment on the basis that *Apprendi* would preclude the sentencing court from factfinding altogether.  (*Id.* at p. 28 (conc. opn. of Thomas, J.).)

The California Supreme Court, while acknowledging that a majority of the high court had voiced constitutional concerns about the proper scope of judicial inquiry in *Shepard*, observed that the court had resolved the issue as a matter of statutory interpretation.  (*McGee*, *supra*, at p. 708.)  The *McGee* court "recognize[d] the possibility that the United States Supreme Court, in future decisions, may extend the *Apprendi* rule. . . ."  (*Id.* at p. 709.)  But the court concluded "we are reluctant to assume, in advance of such a decision by the high court, that the federal constitutional right to a jury trial will be interpreted to apply" to examining the record of a prior conviction for sentencing purposes.  (*Ibid.*)  Accordingly, the California Supreme Court held that the type of examination of the record conducted by the court that sentenced McGee fell within *Apprendi*'s prior conviction exception.  (*Ibid.*)

The United States Supreme Court recently revisited the issue in *Descamps v. United States* (2013) 133 S.Ct. 2276 (*Descamps*), another case concerning the application of *Apprendi* to sentence enhancements under the ACCA.  Like the defendant in *Shepard*, Descamps faced a 15-year minimum sentence based on the finding of a prior conviction for burglary.  Descamps had pleaded guilty to burglary in California, wherein "[e]very person who enters [certain locations] with intent to commit grand or petit larceny or any felony is guilty of burglary."  (§ 459.)  This California statute sweeps more broadly than the generic definition of burglary under the ACCA, which requires the element of "unlawful or unprivileged entry."  (*Taylor v. United States*, *supra*, 495 U.S. at p. 599.)  To determine whether Descamps' prior offense involved "unlawful or unprivileged entry," the sentencing court looked to facts set forth in the transcript of his plea colloquy.

15

At the plea hearing, the prosecutor had proffered that the crime involved the breaking and entering of a grocery store, and Descamps failed to object to that statement. (*Descamps, supra,* at p. 2282.) On this basis, the district court doubled his sentence.

The high court rejected this factfinding as a violation of the Sixth Amendment under *Apprendi*. After first applying a statutory construction analysis as it did in *Shepard*, the court turned to the "Sixth Amendment underpinnings" of the analysis. The court held that a sentencing court's factfinding "would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction." (*Descamps*, *supra*, at p. 2288.) The court continued, "Those concerns, we recognized in *Shepard*, counsel against allowing a sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,'. . . ." (*Ibid.*)[6] Thus, in *Descamps*, a majority of the United States Supreme Court held that a sentencing court's finding of priors based on the record of conviction implicates the Sixth Amendment under *Apprendi*.[7]

Turning to the case at bar, we hold that the Sixth Amendment under *Apprendi* precluded the court from finding the facts — here in dispute — required to prove a strike prior based on the gross vehicular manslaughter offense. Like the court that sentenced Descamps, the trial court looked beyond the facts necessarily implied by the elements of the prior conviction. The record here was even barer than that in *Descamps*. There is no record of any plea colloquy, or any other admissions — factual or otherwise — made by Wilson on the record of the prior conviction. The only facts in the record — apart from those necessarily implied by the elements of the offense — are those found in the transcript of the preliminary hearing. The hearing consisted of testimony from several

---

[6] For this proposition, the court cited to its plurality opinion in *Shepard*, together with Justice Thomas's concurring opinion.

[7] Justice Thomas, concurring in the judgment, again wrote separately to express his view that *Apprendi* prohibits a sentencing court from all factfinding. (*Descamps*, *supra*, at p. 2295 (conc. opn. of Thomas, J.).)

16

witnesses who offered statements evidencing, at times, competing versions of key facts. None of Wilson's statements — not even those offered via hearsay by the officer who questioned him — established personal infliction. To the contrary, the record shows Wilson explicitly contested the key fact at issue — whether Horvat grabbed the steering wheel. To resolve the issue, the sentencing court was necessarily required to weigh the credibility of various witnesses and statements. The trial court could not have increased Wilson's sentence without "mak[ing] a disputed determination" of fact — a task the United States Supreme Court specifically counseled against. (*Descamps*, *supra*, at p. 2288.)

We need not consider here whether the broader application of *Apprendi* and *Descamps* to California's sentence enhancement scheme would leave intact the kinds of findings — e.g., those not concerning the facts of a defendant's prior conduct — heretofore endorsed under California law. We hold only that federal law prohibits what *McGee* already proscribed, absent the findings of a jury: A court may not impose a sentence above the statutory maximum based on disputed facts about prior conduct not admitted by the defendant or implied by the elements of the offense.[8]

The history of this case underscores the importance of the procedural safeguards furnished by this rule. At the time of Wilson's prior offense in 1993, the Legislature had not yet enacted section 1192.8 (clarifying that section 1192.7 includes gross vehicular manslaughter as a "serious felony" when a defendant personally inflicts great bodily injury on a nonaccomplice). And this court did not decide whether section 1192.7 included that offense until 1994 in *People v. Gonzales*, *supra*, 29 Cal.App.4th 1684. Adding to this uncertainty, the Three Strikes law had not yet been enacted when Wilson entered his plea in 1993. Thus, the most prescient of counsel could not have foreseen the extent of Wilson's potential liability. Even assuming these matters could have been

---

[8] Under *Apprendi*, of course, a court could increase a defendant's sentence if a jury found the required facts beyond a reasonable doubt.

17

predicted, Wilson had no legal right to litigate all the facts relevant to the findings required to establish a serious felony. (See *People v. Henley* (1999) 72 Cal.App.4th 555, 565 ["There was no justiciable issue [. . .] concerning the serious felony elements. . . . Defendant thus had no right or opportunity to litigate the question at that time."].) To double a defendant's sentence based on disputed facts that he had no reason or right to contest would be fundamentally unfair.

D. *Waiver*

The Attorney General contends Wilson waived his claim by failing to raise it on direct appeal from his initial sentencing in 1999. The Attorney General erroneously states that "appellant specifically did not challenge the strike finding as to his conviction for vehicular manslaughter." In his opening brief in the prior appeal, Wilson primarily challenged the strike prior arising from the injuries inflicted on Horvat. The logic of his arguments — that the evidence was insufficient to support a finding of personal infliction of great bodily injury, and that the trial court erred in making such findings under *Guerrero* — apply on the same grounds to the strike prior at issue here. Wilson's opening brief in his first appeal back in 1999 so recognized, arguing that "[p]roximate cause is not enough to find that Wilson personally inflicted or personally caused the injuries *to both Horvat and the deceased, Haessly,* and is therefore insufficient to qualify as a serious felony." (Italics added.)

Furthermore, in his reply brief in that prior appeal, Wilson explicitly set forth his claim as to the second strike prior arising from the injuries to Haessly. He argued that "although the evidence established beyond a reasonable doubt that Haessly suffered serious bodily injury [. . .], it did not so establish personal infliction in light of the evidence that Horvat grabbed the steering wheel[,] leading to the accident. Thus, Wilson does challenge the sufficiency of the evidence of this strike as well." Wilson then

18

requested leave to enlarge his appeal to include the strike prior based on the vehicular manslaughter.[9]

Wilson, now appealing from resentencing on remand, further argues that the sentencing court erroneously interpreted the federal court's mandate on remand. The Attorney General contends the federal court's order was a limited remand that left the trial court without authority to strike the strike prior based on the vehicular manslaughter conviction. But the federal district court's order does not refer to the strike priors at all. It simply vacated Wilson's sentence, and remanded for resentencing "in a manner consistent with the views stated" in the opinion of the Ninth Circuit Court of Appeals. That court, applying *Apprendi*, noted the absence of support for the finding of personal infliction, and held that "[t]he judge's fact-finding seven years after the 1993 conviction extended beyond any reasonable interpretation of the prior conviction exception." (*Wilson v. Knowles*, *supra*, 638 F.3d at p. 1215.) In its harmless error analysis, the court held that Wilson could have created reasonable doubt as to whether Horvat caused the accident by grabbing the steering wheel. (*Id.* at p. 1216.) While that opinion primarily discusses the first strike prior, the logic underlying the analysis applies with equal force to the second strike prior.[10] The state trial court's judgment to the contrary provided fresh grounds for appeal.

---

[9] The majority opinion in the prior appeal implicitly declined defendant's request. The opinion characterized his appeal as raising only a claim as to the strike prior pertaining to Horvat. Courts of appeal generally disfavor claims raised for the first time in an appellant's reply brief. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.) However, this rule may be relaxed when the parties come before the court a second time, or intervening case law has affected the proper disposition of the case. (*Meier v. Ross General Hospital* (1968) 69 Cal.2d 420, 424; *Bardeen v. Commander Oil Co.* (1941) 48 Cal.App.2d 355, 358, fn. 1.) Both conditions apply here.

[10] This is not to say we are bound by that analysis under the doctrine of law of the case. "[L]aw of the case doctrine is not absolute; it 'is merely a rule of procedure and does not go to the power of the court. . . .' [Citation.] Further, we are not required to adhere to decisions by the federal appellate courts, even on questions of federal law." (*Adams v. Pacific Bell Directory* (2003) 111 Cal.App.4th 93, 97 [citing *Metalclad Corp.*

The Attorney General argues that our holding in *People v. Senior* (1995) 33 Cal.App.4th 531, mandates waiver here. There, we held that an appellant could not raise a claim for the first time on his third appeal, even after remand for resentencing. However, we "caution[ed] against an overly broad interpretation of our holding. There are many circumstances — too numerous to contemplate — where legitimate appellate issues arise in the trial court following an appeal and remand." (*Id.* at p. 538.) One of the circumstances we *did* contemplate exists here: A significant change in the applicable law. (*Ibid.*) Both *McGee* and *Descamps* were handed down long after Wilson's initial appeal. The subsequent establishment of a right to a jury trial under the federal Constitution weighs especially strong against a finding of waiver. (See *People v. French* (2008) 43 Cal.4th 36, 48 [defendant did not forfeit Sixth Amendment right to a jury trial on aggravating circumstances where right had yet to be established].)

Finally, Wilson cannot waive his claim because the trial court was not authorized to impose the sentence. "If a trial court imposes a sentence unauthorized by law, a reviewing court may correct that sentence whenever the error is called to the court's attention." (*People v. Crooks* (1997) 55 Cal.App.4th 797, 811.) "[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case. Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) The sentencing court here could not have imposed the defective sentence under any circumstances. Furthermore, we resolve Wilson's claim not by resolving a factual dispute, but rather by acknowledging its existence.

Given the above procedural history and circumstances, we find Wilson has not waived his claim on appeal.

---

*v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1714-1715].)

20

E. *Harmless Error*

Having found Wilson's sentence unauthorized under *Apprendi*, we now consider whether the error requires reversal. "Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." (*Washington v. Recuenco* (2006) 548 U.S. 212, 222.) "Such an error does not require reversal if the reviewing court determines it was harmless beyond a reasonable doubt, applying the test set forth in *Chapman v. California* (1967) 386 U.S. 18. . . ." (*People v. French*, *supra*, 43 Cal.4th at pp. 52-53.) If we conclude, beyond a reasonable doubt, that a jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true the strike prior allegation, then the error is harmless. (See *id.* at p. 53 [assessing harmless error under *Cunningham v. California* (2007) 549 U.S. 270].) "The failure to submit a sentencing factor to a jury may be found harmless if the evidence supporting that factor is overwhelming and uncontested, and there is no 'evidence that could rationally lead to a contrary finding.' " (*French*, *supra*, at p. 53.)

As noted by the Ninth Circuit Court of Appeals, the analysis is somewhat obscured by requiring us to imagine a trial that never occurred. (*Wilson v. Knowles*, *supra*, 638 F.3d at p. 1216.) Even assuming a hypothetical jury would have seen only the evidence that was presented at the preliminary hearing, we cannot say with any certainty––much less beyond a reasonable doubt—that such a jury would have found Wilson's offense to be a serious felony.

The record contained several facts from which a jury could rationally find reasonable doubt as to the finding of personal infliction. The movement of the car before the accident — from the right lane to the left, then back across the road — was consistent with someone grabbing the steering wheel. Horvat's own testimony was inconclusive, since she had no memory of the accident. She admitted panicking while driving the night before. While a jury might have doubted the credibility of Wilson's statements, they also could have doubted Horvat's credibility. She denied knowing Wilson had been drinking,

21

and she was aware of her own potential liability.  On this basis, we agree with the Ninth Circuit Court of Appeals that Wilson could have created reasonable doubt as to whether Horvat grabbed the wheel of the car.  (*Wilson v. Knowles*, *supra*, at p. 1216.)

In sum, we find the evidence on the record could rationally support a jury's finding of reasonable doubt as to the requirement of personal infliction.  The error was therefore not harmless.  We will reverse.

### III.   DISPOSITION

The finding that Wilson's 1993 conviction for gross vehicular manslaughter while intoxicated was a serious felony and a strike prior for purposes of resentencing is stricken, and the judgment is reversed.  We remand this matter to the trial court for resentencing consistent with this opinion.


_____

MÁRQUEZ, J.




WE CONCUR:



_____

RUSHING, P.J.




_____

GROVER, J.


22

Trial Court:                                      Santa Clara County
                                                  Superior Court No.:  C9922421


Trial Judge:                                      The Honorable Philip H. Pennypacker


Attorney for Defendant and Appellant              Michael Satris
Rick J. Wilson:                                   under appointment by the Court of
                                                  Appeal for Appellant




Attorneys for Plaintiff and Respondent            Kamala D. Harris,
The People:                                        Attorney General

                                                  Dane R. Gillette,
                                                  Chief Assistant Attorney General

                                                  Gerald A. Engler,
                                                  Senior Assistant Attorney General

                                                  Stan Helfman,
                                                  Supervising Deputy Attorney General

                                                  Christopher J. Wei,
                                                  Deputy Attorney General




People v. Wilson
H037262