Filed 9/22/15  P. v. Cruz CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040475 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. Nos. C1347711, C1241330 & C1246888) |
| v. | |
| HENRY SABLAN CRUZ, | |
| Defendant and Appellant. | |

Defendant Henry Sablan Cruz appeals from a judgment entered following his no contest pleas in three felony cases.  On appeal, defendant challenges the sentences imposed in the cases, because the court found his prior Florida burglary conviction qualified as a serious felony within the meaning of Penal Code section 667, subdivision (a).[1]  On appeal, defendant asserts there was insufficient evidence that his prior burglary conviction was a serious felony.  In addition, defendant argues that the trial court erred in making additional factual findings regarding the burglary conviction under *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*), and *Descamps v. United States* (2013) 570 U.S. ___ [133 S.Ct. 2276] (*Descamps*).

---

[1] All further unspecified statutory references are to the Penal Code.

## STATEMENT OF THE CASE[2]

### Case No. C134771

An information alleged that defendant committed first degree burglary (§§ 459, 460, subd. (a)), and possession of methamphetamine (Health & Safety Code, § 11377, subd. (a)). It was also alleged that defendant committed the crimes while he was released on bail or his own recognizance (§ 12022.1). In addition, the information alleged defendant and suffered a prior serious felony conviction that also qualified as a strike (§§ 667, subds. (a), (b)-(i), 1170.12).

Defendant pleaded no contest to all of the charges, and admitted the "on bail" enhancement. The parties agreed to sentencing ranges depending upon whether or not the prior was found to be serious felony or strike. Specifically, if the prior was found to be a serious felony and strike, the minimum sentence would be nine years, and the maximum sentence would be 13 year, and if not, the minimum sentence would be two years eight months, and the maximum sentence would be six years eight months.

After a court trial, the prior serious felony and prior conviction was found to be true. The court dismissed the prior strike conviction pursuant to *People v. Romero* (1996) 13 Cal.4th 497.

Because the plea bargain provided for a minimum sentence if the prior was found to be true, the court imposed a total of nine years comprised of four years for the burglary, 16 months for the possession of methamphetamine to be served concurrently, and a consecutive term of five years for the prior serious felony.

### Case No. C1241330

A complaint filed in 2012 alleged that defendant possessed methamphetamine and drug paraphernalia (Health & Saf. Code, §§ 11377, subd. (a), 11364.1). The complaint

---

[2] The underlying facts of the cases are omitted, because they are not relevant to the issues on appeal.

also alleged that defendant was under the influence of a controlled substance (Health & Saf. Code, §11550, subd. (a)). In exchange for an agreed upon 16-month sentence to run concurrent to the prison term in Case No. C134771, Defendant pleaded no contest to possession of methamphetamine, and the remaining changes were dismissed.

### *Case No. 1246888*

A complaint filed in 2012 alleged that defendant possessed methamphetamine and committed the crime while released on bail (Health & Saf. Code, §§ 11377, subd. (a), § 12022.1). In exchange for an agreed upon 16-month sentence to run concurrent to the prison term in Case No. C134771, defendant pleaded no contest to possession of methamphetamine, and bail enhancement was dismissed.

Defendant filed a notice of appeal challenging the sentence in all three cases.

### DISCUSSION

Defendant asserts there was insufficient evidence that his Florida conviction for burglary qualified as a serious felony under California law. In addition, defendant argues that the trial court erred by making findings of fact with regard to his prior conviction, and that this violated his federal constitutional rights to a jury trial and due process. Finally, defendant asserts that principles of both double jeopardy and res judicata bar retrial on the prior-conviction allegation.

### *Prior Florida Conviction for Burglary*

Here, the prosecution sought to use defendant's conviction for burglary in Florida in order to enhance his sentence under the "Three Strikes" law. "A conviction in another jurisdiction qualifies as a strike if it contains all of the elements required for a crime to be deemed a serious felony or violent felony in this state." (*People v. Rodriguez* (2004) 122 Cal.App.4th 121, 128.)

The Florida law under which defendant was convicted of burglary is as follows: "For offenses committed after July 1, 2001, 'burglary' means: [¶] 1. Entering a

3

dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or [¶] 2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance; a. Surreptitiously, with the intent to commit an offense therein; [¶] b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or [¶] c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.: (Fla. Stats. Ann., § 810.02, subd. (1)(b)-(c).)

Florida law defines "structure," "dwelling," and "conveyance" as follows: "(1) 'Structure' means a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof. . . . [¶] (2) 'Dwelling' means a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof. . . . [¶] (3) 'Conveyance' means any motor vehicle, ship, vessel, railroad vehicle or car, trailer, aircraft, or sleeping car; and 'to enter a conveyance' includes taking apart any portion of the conveyance." (Fla. Stats. Ann., § 810.011.)

It is undisputed that Florida burglary statutes are "broader than California's first degree burglary and could encompass both conduct considered first degree burglary in California as well as lesser conduct." (*People v. Sample* (2011) 200 Cal.App.4th 1253, 1261 (*Sample*).) In California, first degree burglary is defined as, "[e]very burglary of an inhabited dwelling house, . . . which is inhabited and designed for habitation,…or the inhabited portion of any other building. . . ." (§ 460, subd. (a).) "The elements of first degree burglary in California are (1) entry into a structure currently being used for dwelling purposes and (2) with intent to commit a theft or a felony." (*Sample*, *supra*, 200 Cal.App.4th at p. 1261.) Moreover, "any burglary of the first degree," is considered a " 'serious felony,' " in California. (§ 1192.7, subd. (c)(18).)

4

In order to prove that defendant's prior conviction for burglary in Florida constituted a prior serious felony in California, the prosecution submitted seven documents to the court that comprised the record of conviction. These included the information, minute order from the plea, judgment, minute order from the sentencing and order of restitution.

The information in the Florida case alleged that defendant committed a "Burglary of a Dwelling," in that he "did unlawfully enter or remain in a certain structure, to-wit: a dwelling, located at or in the vicinity of 255 West End Drive, #3211, Punta Gorda, Flordia . . . the property of Dawn Riley, as an owner or custodian thereof, with the intent to commit an offense therein, to-wit: theft, contrary to Florida Statutes 810.02." Counts 2 and 3 alleged that defendant committed misdemeanor petit theft of property valued at less than $100 in violation of Florida Statutes section 812.014 and that he took a credit card belonging to Dawn Riley in violation of Florida Statutes section 817.60(1).

The minute order from defendant's plea of not guilty provided that the alleged crimes were "810.01 3A burglary of occupied dwell," "812.014 3A petit theft of property," and "817.60 1 theft of credit card." (Capitalization omitted.) The "Plea Form" was signed by defendant that stated that he pleaded no contest to all three alleged crimes, and that the prosecution recommended that defendant pay $100 in restitution.

The judgment stated that defendant entered pleas to "burglary of dwelling" under Florida Statutes section "810.02 3A," "petit theft of property," under Florida Statutes section "812.014 3A" and "theft of credit card" under Florida Statutes section 817.60 1." (Capitalization omitted.) The judgment also set forth the terms of defendant's probation, and the order that he pay $100 in restitution to the victim.

The minute order from defendant's sentencing hearing stated that defendant was placed on probation for "burglary of dwelling," "petit theft," and "theft of credit card." (Capitalization omitted.) In addition, the order of restitution stated that defendant was

5

ordered to pay $100 in restitution to Dawn H. Riley at 255 West End Drive, Punta Gorda, Florida 33950 as a condition of probation.

Based upon the documents presented as the record of conviction, the trial court concluded that defendant's Florida burglary prior constituted a serious felony under California law. Defendant argues that in doing so, the trial court violated his right to a jury trial, because it made additional findings of fact. Specifically, "the court necessarily found (1) the dwelling was a residence, as defined by California law; (2) [defendant] entered the residence to commit the burglary, he did not just remain there; and (3) he entered with the intent to commit theft or a felony, not any offense."

California law allows a trial court to consider the record of conviction when determining if a foreign conviction qualifies as a strike for the purpose of sentencing enhancement. (*People v. McGee* (2006) 38 Cal.4th 682, 686, 708-709 (*McGee*).) Moreover, "it is the court, rather than the jury, that is entrusted with the responsibility of undertaking this inquiry and making the determination." (*Id*. at p. 685, italics omitted.)

Defendant argues that the Supreme Court's decision in *Descamps, supra,* 570 ___ U.S. ___ [133 S.Ct. 2276], alters the holding of *McGee* insofar as the defendant's right to trial on the issue of whether a prior conviction constitutes a strike. In *Descamps*, the court considered the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e)). The ACCA "increases the sentences of certain federal defendants who have three prior convictions 'for a violent felony,' including 'burglary, arson, or extortion.' To determine whether a past conviction is for one of those crimes, courts use what has become known as the 'categorical approach': They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood. The prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than those of the generic offense." (*Descamps, supra,* 570 U.S. at p. ___ [133 S.Ct. at p. 2281].)

6

A " 'modified categorical approach' " is used "when a prior conviction is for violating a so-called 'divisible statute.' That kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element of the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." (*Descamps, supra,* ___ U.S. at p. ___ [133 S.Ct. at p. 2281.)

The court in *Descamps* noted that the modified categorical approach was properly applied in *Shepard v. United States* (2005) 544 U.S. 13 (*Shepard* ), which involved a divisible Massachusetts burglary statute that covered entries into boats and cars, as well as the " 'generic burglary' " of entry into a building. (*Descamps, supra,* 570 U.S. at p. ___ [133 S.Ct. at p. 2284]; *Shepard, supra,* 544 U.S. at pp. 15-16.) The court in *Shepard* held that, to determine whether the defendant had committed a generic burglary, the court could examine the "terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the pleas was confirmed by the defendant, or . . . some comparable judicial record of this information." (*Shepard*, supra, 544 U.S. at p. 26) However, the court could not examine "police reports or complaint applications" (*Id.* at p. 16) that went "beyond conclusive records made or used in adjudicating guilt" (*Id.* at p. 21). Doing so could lead to "a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea" that implicated the defendant's jury trial right under *Apprendi*. (*Id.* at p. 25.) "The rule of reading statutes to avoid serious risks of unconstitutionality [citation], therefore counsel[ed the court] to limit the scope of

judicial fact finding on the disputed generic character of a prior plea . . . ." (*Id.* at pp. 25-26.)

Descamps* held that the modified categorical approach could not be used "when a defendant was convicted under an 'indivisible' statute—*i.e.*, one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense." (*Descamps, supra,* 570 U.S. at p. ___ [133 S.Ct. at pp. 2281, 2283].) In part, such judicial fact finding would implicate the defendant's jury trial right. "[T]he court's finding of a predicate offense . . . would (at the least) raise serious Sixth Amendment concerns if it went beyond merely identifying a prior conviction. Those concerns, we recognized in *Shepard,* counsel against allowing a sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,' or what the jury in a prior trial must have accepted as the theory of the crime." (*Descamps, supra,* 570 U.S. at p. ___ [133 S.Ct. at p. 2288].) The "elements, not facts," of the crime control whether it qualifies as an ACCA predicate. (*Descamps, supra,* 570 U.S. at p. ___ [133 S.Ct. at p. 2283.)

In *People v. Wilson* (2013) 219 Cal.App.4th 500, this court considered the application of *Descamps* to the determination of whether a prior conviction constituted a serious felony. This court stated, "[W]e hold that the Sixth Amendment under *Apprendi* precluded the court from finding the facts—here in dispute—required to prove a strike prior based on the gross vehicular manslaughter offense. Like the court that sentenced *Descamps,* the trial court looked beyond the facts necessarily implied by the elements of the prior conviction. . . . [T]he record shows [the defendant] explicitly contested the key fact at issue—whether [the victim in the prior conviction case] grabbed the steering wheel. To resolve the issue, the sentencing court was necessarily required to weigh the credibility of various witnesses and statements. The trial court could not have increased [the defendant's] sentence without ' "mak[ing] a disputed" determination' of fact—a task

8

the United States Supreme Court specifically counseled against. (*Descamps, supra,* 570 U.S. at p. ___ [133 S.Ct. at p. 2288].) [¶] We need not consider here whether the broader application of *Apprendi* and *Descamps* to California's sentence enhancement scheme would leave intact the kinds of findings—e.g., those not concerning the facts of a defendant's prior conduct—heretofore endorsed under California law. We hold only that federal law prohibits what *McGee* already proscribed: A court may not impose a sentence above the statutory maximum based on disputed facts about prior conduct not admitted by the defendant or implied by the elements of the offense." (*Wilson, supra,* 219 Cal.App.4th at pp. 515-516, fn. omitted.)

Recently, in *People v. Saez* (2015) 237 Cal.App.4th 1177, the First District Court of Appeal expanded our analysis in *Wilson, supra,* considering "whether a strike determination that does not run afoul of [*McGee*], may nevertheless violate the Sixth Amendment." (*Saez, supra,* 237 Cal.App.4th at pp. 1205-1206.) The court found that while the trial court's reliance on the Wisconsin record of conviction in determining that the defendant's prior conviction was a strike comported with *McGee*, it violated the Sixth Amendment under *Descamps*. (*Saez, supra,* 237 Cal.App.4th at p. 1198.)

In *Saez, supra,* 237 Cal.App.4th 1177, the defendant had been convicted in Wisconsin of false imprisonment while armed, and the trial court enhanced his sentence based on a conclusion that the prior was a serious felony as defined in section 1192.7, subdivision (c). The fact of the conviction alone was not sufficient to demonstrate that it constituted a serious felony under the California law, because it did not include an allegation of personal use of a firearm as is described in section 1192.7, subdivision (c)(8).

In order to find that the defendant personally used a firearm while committing false imprisonment, the trial court reviewed the record of conviction that consisted of the judgment of conviction, the judgment roll, and the criminal complaint. The judgment of

9

conviction stated that the court found Saez guilty of " 'False Impris. While Armed' " under Wisconsin Statutes sections 939.63, subdivision (1)(a)(4) and 940.30, a felony, and " 'Reckless Use of Weapon,' " a misdemeanor, under Wisconsin Statutes section 941.20, subdivision (1)(c). The complaint itself charged Saez with " 'False Imprisonment While Poss. a Dangerous Weapon,' " stating, " '[O]n January 17, 1983, at or about the 500 block of South 2nd Street, City of Milwaukee, [Saez] did intentionally, while possessing a dangerous weapon, to wit: a .38 caliber revolver[,] restrain [the victim] without his consent and with knowledge that he had no lawful authority to do so, contrary to Wisconsin Statutes sections 940.30 and 939.63(1)(a)(4).' " The complaint also charged Saez with a count of " 'Reckless Use of Weapon,' " stating, " '[O]n January [*sic*] at or about the 500 block of South 2nd Street, City of Milwaukee, [Saez] did intentionally point a firearm at [the same victim], contrary to Wisconsin Statutes section 941.20(1)(c).' " The complaint included a police officer's sworn statement that he saw Saez " 'grab the [victim] . . . by the arm and pull [the victim] toward him . . . [and] then . . . remove what was subsequently observed to be a .38 caliber Smith and Wesson handgun revolver from the inner front portion of [his] pants whereupon . . . [he] point[ed] said handgun at the chin of [the victim] whom [he] was restraining by holding on to [the victim]'s arm with his hand whereupon . . . [he], while still holding on to [the victim]'s arm and pointing the above stated handgun at [the victim]'s body, pull[ed the victim down the street and] . . . into a vacant lot.' " (*Saez, supra*, 237 Cal.App.4th at pp.1192-1193.)

The court in *Saez* noted that the police officer's statement that was included with the complaint was "the only part of the record of conviction that demonstrate[d] the necessary elements [of a serious felony]." (*Saez, supra*, 237 Cal.App.4th at p. 1196.) The court concluded that under *McGee*, the trial court properly considered the police officer's statement as part of the record of conviction in determining if Saez's prior

10

conviction qualified as a serious felony. (*Id*. at p. 1197.) However, the court found under *Descamps*, that use of the police officer's statement to enhance Saez's sentence was in contravention of the Sixth Amendment, because the statement conclusively established a fact that was necessary to enhance Saez's sentence. Saez never admitted that he personally used a firearm in the commission of the false imprisonment, nor did he waive his Sixth Amendment right thereto. (*Saez, supra*, 237 Cal.App.4th at p. 1206.)

Here, the record of conviction for the Florida burglary is similar to that in *Saez* with one important difference—the complaint in *Saez* included the police officer's statement that contained a narrative of the crime. The statement provided the necessary information for the trial court to find that Saez personally used a firearm, and as such, his conviction for false imprisonment while armed qualified as a serious felony under California law. In the present case, the record of conviction includes only the information, minute orders, judgment and the order of restitution, none of which present a disputed issue of fact.

Moreover, this case is not like *Wilson*, wherein the trial court weighed the credibility of witnesses to resolve a factual dispute as to whether the defendant personally inflicted great bodily injury on the victim. This court found the fact that the defendant contested this issue at the preliminary hearing was particularly important in concluding that under *Descamps*, the trial court violated Wilson's Sixth Amendment right by resolving the factual dispute. (*Wilson, supra*, 219 Cal.App.4th at pp. 515-516.)

We agree with the court in *Saez* that "the Sixth Amendment discussion in *Descamps, supra,* 133 S.Ct. 2276 was not an unequivocal holding." (*Saez, supra*, 237 Cal.App.4th at p. 1207.) Moreover, *McGee* remains the law in California, and we are bound to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) "[W]ithout hearing from our state Supreme Court," we cannot conclude "that

11

*Descamps* has " 'undermine[d]' " *McGee* [citations]." (*Saez, supra*, 237 Cal.App.4th at p. 1207.)

Here, unlike both *Wilson* and *Saez,* the trial court's use of the record of conviction did not implicate defendant's Sixth Amendment rights. The trial court's consideration of the record of conviction was proper under *McGee*, in that it did not resolve factual issues in dispute and make an independent determination as to those facts, as the trial courts did in both *Wilson* and *Saez.* Rather, here, the court properly "examin[ed] the record of the prior proceeding to determine whether that record [was] sufficient to demonstrate that the conviction [was] of the type that subjects the defendant to increased punishment under California law. (*McGee, supra*, 38 Cal.4th at p. 706, italics omitted.)

The record of conviction in this case provided sufficient evidence that defendant's Florida burglary qualified as a serious felony under California law. The facts and the reasonable inferences drawn there from, demonstrate that defendant entered an inhabited dwelling of which the victim had a possessory interest, that the victim was present at the time of the entry, and that defendant had the intent to steal at the time of entry. The intent to steal can be drawn from defendant's additional conviction for petit theft and theft of a credit card belonging to the victim, in addition to the order of restitution to the victim in the amount of $100. (See, e.g., *Sample, supra* 200 Cal.App.4th at p. 1262 [intent to steal for purposes of burglary can be reasonably inferred from theft after entry].) Defendant's conduct in the Florida burglary qualifies as a first degree burglary in California. (See, e.g., *ibid*. at p. 1261; §§ 459, 460). As such, the court properly considered the Florida prior a serious felony in enhancing defendant's sentence.[3]

---

[3] Because we find the court properly considered the record of conviction in determining whether defendant's Florida prior was a serious felony as defined by California law under *McGee*, and that there was sufficient evidence to support the trial court's conclusion, we do not consider defendant's additional arguments regarding double jeopardy and res judicata.

12

**DISPOSITION**

The judgment is affirmed.

_____
                              RUSHING, P. J.

WE CONCUR:

_____
     ELIA, J.

_____
     WALSH, J.[*]

***People v. Cruz***
**H040475**

_____

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14