Filed 6/27/16  P. v. Cotton CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B260222 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA031646) |
| v. | |
| DUANE COTTON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

California Appellate Project, Jonathan B. Steiner and Richard B. Lennon for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy District Attorney General, Noah P. Hill and Garett A. Gorlitsky, Deputies Attorney General for Plaintiff and Respondent.

Defendant Duane Cotton (defendant) is serving a Three Strikes life sentence following his 1998 felony conviction for eavesdropping in violation of Penal Code[1] section 632.  In December 2012, defendant filed a petition for recall of sentence pursuant to section 1170.126, which was enacted as part of Proposition 36.  The trial court denied the petition, finding defendant ineligible for resentencing because he was armed with a deadly weapon during the commission of the underlying offense.  Defendant challenges that finding, contending that the court improperly relied on portions of the trial transcripts that he argues are unconnected to the sole count on which the jury found him guilty.  We consider what evidence constitutes the record of conviction for purposes of assessing an inmate's eligibility for resentencing under section 1170.126, and whether that record supports the trial court's finding of ineligibility in this case.

## BACKGROUND

### I.  The Offense Conduct[2]

An eight count amended information filed in February 1998 charged defendant with committing multiple criminal acts against his former fiancé, Jeannette M., including stalking, forced oral copulation, assault with a taser, eavesdropping with an electronic recording device during a confidential communication, and two counts each of making terrorist threats and misdemeanor vandalism.  The information alleged defendant had suffered three prior convictions for robbery within the meaning of section 1170.12, subdivision (a) and section 667, subdivisions (b) through (i) (the Three Strikes law).  More relevant for our purposes, the forced oral copulation count of the information included an allegation that defendant was armed with a box cutter during the commission of the offense.  (§ 12022.3 [sentence enhancement for a person armed with a firearm or

---

[1]     All undesignated statutory references that follow are to the Penal Code.

[2]     We take the following factual summary from the trial court's memorandum of decision on defendant's petition for recall of sentence and our opinion in defendant's appeal from his conviction.  (*People v. Cotton* (July 12, 1999, B121762) [nonpub. opn.].)

2

deadly weapon during the commission of the offense].)  Defendant pled not guilty and denied the special allegations.  Trial was to a jury.

At trial, Jeannette M. testified about her relationship with defendant and the events that resulted in the criminal charges against him.  Jeannette M. stated that she began dating defendant in 1994.  The couple eventually moved in together, and they got engaged in 1996.  According to Jeannette M., after they decided to get married, defendant became "possessive, insecure, and jealous."  When Jeannette M. told defendant she wanted to end the relationship, he held a knife to her throat and threatened to "beat [her] ass until [her] mother didn't know who [she] was."  Defendant moved out of their home in November of 1996.  The two continued to have confrontations, causing Jeannette M. to obtain a restraining order against defendant; she was unable, however, to successfully serve him with the order.

On December 4, 1996, defendant asked Jeannette M. to come to his sister's apartment to retrieve some paperwork involving their home.  Jeannette M. reluctantly agreed.  Jeannette M. testified that upon entering the living room, defendant slammed the door shut and locked it.  Defendant grabbed Jeannette M. by the neck, pulled out a box cutter, and threatened to "beat [her] ass."  Holding the box cutter to Jeannette M.'s throat, defendant threatened to "slash [her] up."  He then ordered Jeannette M. to remove her clothes and "wash up" in the bathroom.  Defendant told Jeannette M. he wanted her to fulfill his sexual fantasies and he had Jeannette M. state into a voice recorder that she was acting of her own free will.  Jeannette M. complied and proceeded into the bedroom where she orally copulated him.  Unbeknownst to Jeannette M., defendant recorded the sexual encounter in the bedroom with a videocamera.

Jeannette M. eventually escaped from the apartment.  She screamed for help and asked a neighbor to call the police.  Monrovia Police Department Officer Manuel responded to a call regarding the foregoing incident.

Jeannette M. initially told Officer Manuel that defendant had forced her to undress and held her against her will.  Later, Jeannette M. informed the officer that defendant

3

held a box cutter to her neck. The officer cursorily searched the apartment but did not find a box cutter. Jeannette M. refused to answer most of the questions asked by the officer while he was investigating the call, including whether she had sex with defendant in the apartment. Officer Manuel did not write a police report regarding the incident because he did not believe he was getting the whole story.

W.R. Ireland, a detective with the Pasadena Police Department, testified she was assigned to investigate the case. On March 24, 1997, pursuant to a search warrant, Detective Ireland searched the apartment where the incident occurred. The detective recovered a wallet containing a box cutter from a closet shelf. The box cutter was shown to the jury and admitted into evidence during trial.

Defendant testified in his defense. He admitted to surreptitiously videotaping the sexual encounter with Jeannette M., claiming he did so in order to defend himself if Jeannette M. later claimed the sexual interaction was not consensual. Defendant denied committing the other charged crimes and specifically denied threatening Jeannette M. with the box cutter. Defendant also testified he carried a box cutter in his wallet because he used it to unwrap boxes while working as a truck driver for a food distribution company.

## II.  Defendant's Conviction and Sentencing

The jury convicted defendant of electronic eavesdropping on a confidential communication, acquitted him of vandalizing Jeannette M.'s car tires, and hung on all the other counts charged in the information. Because the jury did not reach a verdict on the forcible oral copulation count, it did not consider the charged allegation that defendant was armed with a box cutter in the commission of that offense, and thus made no finding on that issue one way or the other. The court declared a mistrial on the counts on which the jury hung, and later dismissed those counts.

At defendant's sentencing hearing, the trial court stated, "This was not simply a videotaping of a confidential communication, but this was a videotaping that was done

4

with a weapon. I'm going to find that Mr. Cotton did in fact use the knife in the other room of the apartment." The court continued, "I'm aware of the fact the jury did not unanimously agree that a forcible oral copulation took place. I'm not necessarily stating here that I believe beyond a reasonable doubt that the forcible oral copulation took place. But there was an act of violence committed by Mr. Cotton upon Ms. Jeannette [M.] with a weapon that lead to Ms. [M.] going into the bedroom. That is part of the crime here, the videotaping. That is what got her into the bedroom in the first place, and those are the facts that I believe based upon the evidence that I heard." The court sentenced defendant to a term of 26 years to life in prison, consisting of 25 years to life under the Three Strikes law for eavesdropping, plus one year for one prior prison term. This Court subsequently affirmed the conviction and sentence. (*People v. Cotton* (July 12, 1999, B121762) [nonpub. opn.].)

### III. The Petition for Recall of Sentence

In November 2012, California voters approved Proposition 36, the Three Strikes Reform Act of 2012 (the "Act"). The Act permits a person serving an indeterminate life sentence under the Three Strikes law for conviction of a felony or felonies that are not defined as serious and/or violent under section 667.5, subdivision (c), or section 1192.7, subdivision (c) to file a petition for recall of sentence. (§ 1170.126.) However, a third strike defendant is not eligible for resentencing if, "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii), 1170.126, subd. (e)(2).)

Shortly after the passage of Proposition 36, defendant filed a petition for recall of sentence, seeking resentencing as a second strike offender. The People opposed the petition, contending that defendant was ineligible for resentencing because he was armed with a deadly weapon, the box cutter, during the commission of the eavesdropping offense.

5

The trial court held a hearing on the question of whether defendant was eligible for a Proposition 36 recall of sentence. The court admitted into evidence transcripts of defendant's trial, his medical records, and Department of Corrections and Rehabilitation reports documenting defendant's record of good conduct in prison. The court heard argument from both parties and took the matter under submission.

The trial court issued a decision on the sentence recall petition in which it found, pursuant to section 1170.12, subdivision (c)(2)(C)(iii) and section 667, subdivision (e)(2)(C)(iii), that defendant was armed with a deadly weapon during the commission of the eavesdropping offense of conviction. The court relied on Jeannette M.'s testimony that defendant held a box cutter to her throat, threatened to "slash [her] up," and told her that she was going to fulfill his sexual fantasies. The court also relied on Detective Ireland's recovery of the box cutter from defendant's wallet. The court did not credit defendant's claim that he carried the box cutter in his wallet for his job, stating: "the weight given to [his] testimony is not significant in light of his incentive to testify dishonestly at his own trial. The record identifies no such incentive for [Jeannette M.] . . . " The court concluded, "Based on the totality of the evidence elicited at trial, the court finds it is more likely than not that [defendant] had ready access to the box cutter for offensive or defensive use at the time he lured [Jeannette M.] into the bedroom where the electronic eavesdropping took place. . . . " Based on its findings, the court held defendant ineligible for resentencing under section 1170.126, subdivision (e)(2) and denied his petition.

## DISCUSSION

A violation of section 632, the offense that triggered defendant's Three Strikes sentence, is not enumerated in the statutory list of serious and violent felony offenses for which resentencing is barred under Proposition 36. (See §§ 667, subd. (e)(2)(C), 667.5, subd. (c), 1170.12, subd. (c)(2)(C), 1192.7, subd. (c).) Under section 1170.126, subdivision (e)(2), a defendant is nevertheless ineligible for resentencing if, "[d]uring the

6

commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§§ 667, subd. (e)(2)(C)(iii), 1170.12, subd. (c)(2)(C)(iii).)

Unlike the ultimate determination of whether an otherwise eligible petitioner should be resentenced, the eligibility determination required by subdivision (e)(2) is not a determination the trial court makes as a matter of discretion. (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1336.) The Act provides that "the court shall determine whether the petitioner satisfies the criteria in subdivision (e). . . . " (§ 1170.126, subd. (f).) And because the Act fixes ineligibility not on statutory violations or enhancements but on "facts attendant to commission of the actual offense, the express statutory language requires the trial court to make a factual determination that is not limited by a review of the particular statutory offenses and enhancements of which petitioner was convicted." (*People v. Bradford*, *supra*, at p. 1332.) "[D]isqualifying factors need not be pled and proved to a trier of fact beyond a reasonable doubt; hence, a trial court determining whether an inmate is eligible for resentencing under section 1170.126 may examine relevant, reliable, admissible portions of the record of conviction to determine the existence of a disqualifying factor." (*People v. Blakely* (2014) 225 Cal.App.4th 1042, 1048-1049.) For this purpose, the record of conviction includes pleadings, trial transcripts, pretrial motions, and any appellate opinion. (See, e.g., *People v. White* (2014) 223 Cal.App.4th 512; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1027, 1030; *People v. Manning* (2014) 226 Cal.App.4th 1133, 1140-1141.) "[A] trial court need only find the existence of a disqualifying factor by a preponderance of the evidence. (Evid. Code, § 115; see [*People v. Superior Court* (*Kaulick*) (2013)] 215 Cal.App.4th [1279,] 1305[] [addressing determination of dangerousness].)" (*People v. Osuna*, *supra*, at p. 1040.)

Defendant challenges the trial court's finding of ineligibility on two grounds: He contends that the court erred by not limiting its review solely to what he believes is the

7

factual basis for the eavesdropping offense, and that, in any event, there is insufficient evidence to support the finding that he was armed during the commission of that offense.

1.    *The record of conviction*

Defendant relies on *People v. Wilson* (2013) 219 Cal.App.4th 500, *People v. Guerrero* (1988) 44 Cal.3d 343, and *People v. Trujillo* (2006) 40 Cal.4th 165 (*Trujillo*) to contend that the trial court erred in relying on those portions of the reporter's transcript of his trial that he views as unrelated to the eavesdropping count on which the jury convicted. According to defendant, "where a case involves factual disputes that the trier of fact did not have to resolve to reach its verdict, a court cannot later make findings of such disputed facts to determine that the crime involved conduct making it a serious felony." However, none of the cited cases support his argument. Rather, cases reviewing eligibility findings under the Act have consistently held, based on the language of the Act itself, that the trial court is to review the entire record of conviction to determine whether the defendant was armed during the commission of the conviction offense. (See, e.g., *People v. Bradford, supra,* 227 Cal.App.4th at p. 1338; *People v. Blakely, supra,* 225 Cal.App.4th at pp. 1048-1049.) Here, the record of conviction supports the trial court's finding that the presence of the box cutter in the living room was temporally connected to defendant's commission of the eavesdropping offense and indeed facilitated it; the box cutter persuaded Jeannette M. to comply with defendant's instructions to go to the bedroom, where she was unwittingly videotaped.

*People v. Wilson, supra,* 219 Cal.App.4th 500, is not a Proposition 36 recall of sentence case and it does not support the claim that the trial court conducted too broad an examination of the evidence at trial. In *Wilson*, the appellate court held that a trial court's resolution of a factual issue, namely whether the offense involved personal infliction of great bodily injury, violated Wilson's Sixth Amendment rights pursuant to the holding of *Apprendi v. New Jersey* (2000) 530 U.S. 466. Unlike the situation in *People v. Wilson*, where the trial court's finding was used to *increase* Wilson's sentence, defendant's

8

eligibility for a *lesser* sentence based on the trial court's factual determination does not implicate the holding of *Apprendi*. (*People v. Osuna, supra,* 225 Cal.App.4th at p. 1039 ["*Apprendi* and its progeny do not apply to a determination of eligibility for resentencing under the Act"]; see also *Dillon v. United States* (2010) 560 U.S. 817, 828-829 [defendant's right to have essential facts found by jury beyond a reasonable doubt do not apply to downward sentence modifications due to intervening laws].)

In *People v. Guerrero, supra,* 44 Cal.3d 343, the Supreme Court held that a trial court may examine the entire record of a prior conviction to determine the existence of a fact which is not established by the conviction itself. The Supreme Court "held that in determining the truth of a prior conviction allegation, the trier of fact may 'look beyond the judgment to the entire record of the conviction' (*id.* at p. 356) '*but no further*' (*id.* at p. 355)." (*Trujillo, supra,* 40 Cal.4th at p. 177.) Defendant argues that the trial court here did go further by, in his words, looking beyond the "evidence which shows the nature of defendant's conduct underlying *the conviction.*" Any suggestion, however, that the trial court could not consider the box cutter evidence because it was not alleged in connection with the criminal eavesdropping count or because the jury did not reach the question of whether defendant was armed with the box cutter is not well taken. An ineligibility finding need not be based on allegations pled and proved in the underlying action. (*People v. Blakely*, *supra*, 225 Cal.App.4th at pp. 1058-1063 [disqualifying factors need not be pled and proved to a trier of fact]; accord *People v. White, supra,* 223 Cal.App.4th at pp. 526-527; *People v. Osuna, supra,* 225 Cal.App.4th at pp. 1033-1035.) If defendant was in fact armed with a deadly weapon during the commission of the eavesdropping, it is immaterial that the prosecution did not seek a finding to that effect at trial.

Defendant points, however, to our Supreme Court's statement in *Trujillo*, that "'the relevant inquiry . . . is limited to an examination of the record of the prior criminal proceeding *to determine the nature or basis of the crime of which the defendant was convicted.*'" (*Trujillo*, *supra*, 40 Cal.4th at p. 179, quoting *People v. McGee* (2006) 38

Cal.4th 682, 691.)  Defendant's reliance on *Trujillo,* which also is not a Proposition 36 resentencing case, is misplaced.

In *Trujillo*, the prosecution asserted Trujillo's prior conviction for inflicting corporal injury was a qualifying strike.  The prosecution argued that the offense was a serious felony within the meaning of the Three Strikes law because Trujillo personally used a dangerous or deadly weapon in the commission of the offense.  (40 Cal.4th at pp. 169-170.)

The documents that the People relied on to prove the prior conviction indicated that the infliction of corporal injury charge included an allegation that Trujillo had personally used a deadly and dangerous weapon in the commission of the offense.  He was concurrently charged with assault with a deadly weapon, a knife.  The record of conviction further revealed that, pursuant to a plea bargain, Trujillo pled guilty to inflicting corporal injury, while the weapon allegation and assault charge were dismissed. After Trujillo pled guilty, however, he admitted using the knife in an interview with a probation officer, and the officer documented his statement in a pre-sentencing probation report.  The prosecutor relied on the report to argue that the conviction for inflicting corporal injury was a serious felony, and thus a prior strike.  (*Trujillo, supra,* 40 Cal.4th at pp. 170-171.)  Noting that Trujillo was convicted only of inflicting corporal injury, defense counsel argued that "whatever he said in the probation report is not relevant and not something the Court can look at because it undermines the conviction itself."  (*Id.* at p. 171.)  The trial court ruled that the prior conviction was not a strike.

The Supreme Court agreed, explaining:  "A statement by the defendant recounted in a postconviction probation officer's report does not necessarily reflect the nature of the crime of which the defendant was convicted.  In the present case, for example, the prosecution did not attempt to prove that defendant used a knife and, instead, entered into a plea bargain in which it dismissed the allegation that defendant used a deadly or dangerous weapon and committed an assault with a deadly weapon.  The prosecution could not have compelled defendant to testify, and thus could not have used defendant's

subsequent admission that he stabbed the victim to convict him.  Once the court accepted his plea, defendant could admit to the probation officer having stabbed the victim without fear of prosecution, because he was clothed with the protection of the double jeopardy clause from successive prosecution for the same offense.  [Citation.]  Defendant's admission recounted in the probation officer's report, therefore, does not describe the nature of the crime of which he was convicted and cannot be used to prove that the prior conviction was for a serious felony." (*Trujillo, supra,* 40 Cal.4th at p. 179.)

*Trujillo* is inapposite here.  The Supreme Court ruled that Trujillo's postconviction statement to the probation officer was not part of the record of conviction because, at the time of the admission, Trujillo had already pled guilty to the charge of inflicting corporal injury, and the court had dismissed, pursuant to the terms of the plea agreement, all allegations concerning Trujillo's use of a knife in the commission of the conviction offense.  Because a guilty plea constitutes a conviction for purposes of sentence enhancement (*People v. Laino* (2004) 32 Cal.4th 878, 882), Trujillo's admission "was made after [he] was convicted and does not reflect the facts upon which he was convicted." (*Trujillo, supra,* 40 Cal.4th at p. 180.)  This holding does not help defendant, since all of the evidence upon which the trial court relied in making its eligibility determination was entered into the record prior to his conviction for eavesdropping.

Nor does the Fourth District Court of Appeal's decision in *People v. Berry* (2015) 235 Cal.App.4th 1417 aid defendant.  *People v. Berry* is a Proposition 36 resentencing case, one in which the defendant pled guilty to charges of possession of a fraudulent check and possession of a forged driver's license.  In exchange for the defendant's guilty pleas, the prosecution agreed to dismiss the remaining counts, including felon in possession of a firearm, felon carrying a loaded firearm in a vehicle, and possession of methamphetamine with a firearm.  (*Id.* at pp. 1421, 1426.)  The court of appeal concluded the trial court should not have considered the preliminary hearing testimony of police officers who had observed Berry opening the trunk of a car which contained a loaded gun

11

and should not have used that testimony to conclude the defendant was ineligible to seek recall of his sentence.  (*Id.* at pp. 1421-1422.)

The *Berry* court stated it is "well-settled under California law that in cases involving plea agreements, it is 'improper and unfair to permit the sentencing court to consider any of the facts underlying [a] dismissed count . . . for purposes of aggravating or enhancing defendant's sentence.  [Citation.]" (*Id.* at p. 1426.)  The court recognized that the trial court's consideration of the police officers' preliminary hearing testimony "might have been appropriate in a case where the defendant's conviction and sentence were based—at least in part—on his *possession* of a firearm [citations]" but the appellate court believed "it was not appropriate . . . where all allegations involving firearm possession were dismissed as part of defendant's plea agreement." (*Id.* at p. 1426.)  Because the evidence that Berry was in possession of a firearm was "wholly unrelated" to the charges on which he was convicted, the court of appeal concluded that "the trial court went outside defendant's 'record of conviction' when it based its assessment of defendant's eligibility for resentencing on evidence of firearm possession. . . . " (*Id.* at p. 1427.)

Unlike the facts in *People v. Berry,* where Berry's conviction and sentence were in no way based on his possession of a firearm, the sentencing court in this case expressly found that defendant used the box cutter to facilitate the eavesdropping.  The court hearing defendant's sentence recall petition made the factual finding that defendant was armed in the commission of the conviction offense.  Also unlike *Berry*, defendant did not plead guilty to the underlying offense of eavesdropping, nor did the prosecution agree to dismiss the seven additional criminal counts in exchange for a guilty plea; those were litigated at trial.

At bottom, defendant cites no case that holds that a court's review of the proceedings at trial to determine eligibility under the Act is error, and for good reason.  We can discern no other way in which the court may perform the function assigned to it by the Act, that is, "to make a factual determination that is not limited by a review of the

12

particular statutory offenses and enhancements of which petitioner was convicted." (*People v. Bradford*, *supra*, 227 Cal.App.4th at p. 1332.) We conclude that the portions of the trial transcripts that the trial court relied on were part of the record of conviction for purposes of determining defendant's eligibility for resentencing under the Act, and that the trial court was authorized to make findings concerning facts disputed at trial, including determinations as to the credibility of the witnesses, based upon its review of that record.

2.      *The sufficiency of the evidence*

Defendant also contends that the record of the trial does not support the court's finding that he was armed during the commission of the eavesdropping offense. Rather, he maintains that the record "demonstrates that defendant was not armed at any time during the videotaping-eavesdropping crime."

"A defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively." (*People v. Bland* (1995) 10 Cal.4th 991, 997.) "[I]t is the availability—the ready access—of the weapon that constitutes arming." (*Ibid.*; see also *People v. White*, *supra*, 223 Cal.App.4th at p. 524.) "The Act disqualifies an inmate from eligibility for lesser punishment if he or she was armed with a firearm '*during* the commission of' the current offense (italics added). 'During' is variously defined as 'throughout the continuance or course of' or 'at some point in the course of.' (Webster's 3d New Internat. Dict. (1986) p. 703.) In other words, it requires a temporal nexus between the arming and the underlying felony, not a facilitative one." (*People v. Osuna*, *supra*, 225 Cal.App.4th at p. 1032.)

Here, the record supports not only a temporal connection between the box cutter and the eavesdropping but even a facilitative one. Although defendant did not take the box cutter with him into the bedroom, he had ready access to it during the entire time Jeannette M. was in the apartment, providing a temporal nexus between the crime and the arming. Moreover, Jeannette M. testified that defendant used the box cutter to get her to

13

the bedroom where he surreptitiously recorded the sexual encounter. This testimony establishes a facilitative nexus between the arming and the offense. There is therefore ample evidence to support the trial court's conclusion that defendant was armed with the box cutter "during the commission of" the predicate felony. (*People v. Bland, supra,* 10 Cal.4th at p. 997; *People v. Osuna, supra*, 225 Cal.App.4th at p. 1032.)

Defendant argues, however, that he disputed Jeannette M.'s testimony at trial, including her testimony about his possession and use of the box cutter. He maintains that "[t]he jury resolved this credibility contest against the victim, convicting [defendant] only of the crime which he admitted, and acquitting him of everything else." That is inconsistent with the record. The jury did not acquit defendant on the additional charges of forcible oral copulation and terrorist threats; rather, the jury did not reach a verdict on those charges. The absence of a jury determination is not dispositive. As noted above, defendant is not entitled to have a jury decide, beyond a reasonable doubt, his eligibility for a reduced sentence. A trial court called to rule on a petition for recall of sentence is empowered to make that determination, and the court "need only find the existence of a disqualifying factor by a preponderance of the evidence." (*People v. Osuna, supra,* 225 Cal.4th at p. 1040.)

In conclusion, the resentencing provision of the Act is "intended to apply exclusively to persons . . . whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) Thus, the basic premise of the Act "is that an inmate who is serving an indeterminate life sentence under prior versions of the 'Three Strikes' law (§§ 667, 1170.12), but whose convictions and related factual findings would not have warranted such a sentence under the revised provisions of the Three Strikes Reform Act passed by the voters, is *eligible* to seek a recall of that earlier sentence." (*People v. Berry, supra,* 235 Cal.App.4th at p. 1420.) Here, both the sentencing court that presided at defendant's trial and the court hearing his sentence recall petition found that defendant was armed with a weapon in the commission of the eavesdropping offense, a finding that is supported by substantial evidence.

14

Consequently, defendant is ineligible for resentencing.  We therefore affirm the order denying defendant's petition for a recall of his sentence.

## DISPOSITION

The order denying the recall petition is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

TURNER, P.J.

KRIEGLER, J.

15